Matthew S. Brahana (WSB No. 6-4290)
FABIAN VANCOTT
215 South State St., Suite 1200
Salt Lake City, Utah 84111
Phone: 801-531-8900
Fax: 801-596-2814
mbrahana@fabianvancott.com
*Attorneys for Plaintiff*

FILED IN THE DISTRICT COURT
OF UINTA COUNTY, WYOMING

OCT 25 2017

ORIGINAL SIGNED BY        DEPUTY
SHANDA FIFE
KERRI HUNSAKER
CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
## IN AND FOR UINTA COUNTY, STATE OF WYOMING

| | |
|---|---|
| RICHARD TERRY FERRIN,<br>Plaintiff,<br><br>v.<br><br>CABELA'S INC. d/b/a CABELA'S,<br>a Delaware corporation, and DOES I-X<br>Defendants. | **COMPLAINT**<br><br>Civil No.: 17-215 |

### COMPLAINT

Richard Terry Ferrin ("Ferrin" or "Plaintiff") complains of Defendant Cabela's Inc. d/b/a Cabela's, a Delaware corporation, and Does I-X (collectively "Defendants"), as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Ferrin is an individual and a resident of the state of Utah.

2. On information and belief, Cabela's Inc. d/b/a Cabela's ("Cabela's") is a corporation created under the laws of the State of Delaware, with its principal place of business in Nebraska. Cabela's marketed, distributed, and sold the Cabela's Pinnacle Shooting Bench (the "Pinnacle Bench"), which is the subject of this lawsuit. On information and belief, Cabela's was involved in the design, manufacture, and testing of the Pinnacle Bench.

3. Does I-X are unknown individuals or entities who were involved in the design, manufacture, testing, marketing, distribution, and/or sale of the Pinnacle Bench.

4. This Court has jurisdiction over this matter and the claims asserted herein pursuant to Wyo. Const. Art. 5 § 10.

5. This Court has personal jurisdiction over Defendants because the Pinnacle Bench injured Ferrin in Wyoming.

6. Venue for this action is proper in Uinta County, Wyoming, pursuant to Wyo. Stat. Ann. § 1-5-107, because the cause of action arose in Uinta County, Wyoming.

## GENERAL ALLEGATIONS

7. Defendants were all involved in various aspects of the design, testing, manufacture, marketing, distribution, and/or sale of the Pinnacle Bench. A photograph of the Pinnacle Bench is shown below.



The Pinnacle Bench is a shooting bench that was inspired by the ergonomic chairs used by professional massage therapists and for which Cabela's "spent countless hours in the field perfecting the design to ensure [the shooter will] enjoy maximum comfort."

8. The Pinnacle Bench is comprised of a plastic table top mounted to three legs, which are arranged in a triangular pattern. A seat is attached to the one leg that is curved. The seat slides up and down the curved leg to adjust for the height of the shooter. The seat purports to lock securely in place through a tongue-and-groove interface, whereby the tongue on the seat fits into one of several grooves on the curved leg supporting the table. There is no locking pin or other device that locks the seat into place.

9. The Pinnacle Bench was marketed with a "300-lb weight capacity ... to accommodate small- to large-framed shooters." On information and belief, the Pinnacle Bench was designed, tested, and manufactured to function safely with a user who weighed in excess of 300 pounds.

10. The Pinnacle Bench did not contain any warning concerning the operation of the seat or the propensity of the seat to slip out of the tongue-and-groove and slide down the leg, stopping abruptly only when the seat hit the ground.

11. Ferrin purchased a Pinnacle Bench new from Cabela's.

12. On or about October 26, 2015, Ferrin was using his Pinnacle Bench near Evanston, Wyoming in Uinta County, Wyoming. While sitting on the seat of the Pinnacle Bench, the tongue-and-groove interface failed, the seat dislodged without warning and very quickly slid down the near-vertical seat post and hit the ground.

13. Because Ferrin had all of his weight on the seat when it fell, Ferrin fell along with the seat.

14. Ferrin suffered a significant and life-altering low back injury as a result of the seat failing to remain in place, as designed, tested, and manufactured.

### FIRST CAUSE OF ACTION
(Strict Liability: Design Defect)

15. Ferrin incorporates paragraphs 1-15 as if fully set forth herein.

16. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

17. A product designer, manufacturer, distributor, and/or seller is liable for injuries caused by its product if: (a) the product was unreasonably dangerous due to a design defect; (b) the design defect existed at the time the product was sold; and (c) the design defect was a cause of the plaintiff's injuries.

18. A product contains a design defect and is unreasonably dangerous when that product is more dangerous than an ordinary consumer would expect.

19. The Pinnacle Bench contained a design defect in that it failed to perform as safely as, and was more dangerous than, an ordinary consumer would expect.

20. The design defect made the Pinnacle Bench unreasonably dangerous in that the person using the Pinnacle Bench would expect the seat to remain firmly affixed in the location where the shooter placed it and that it would not randomly disengage and slide down the leg, causing the user to fall.

21. The design defect of the Pinnacle Bench was present at the time Defendants manufactured, distributed, and sold the Pinnacle Bench.

22. Defendants could have designed the Pinnacle Bench so that this incident would not have happened. Specifically, Defendants could have (a) designed the Pinnacle Bench with a locking pin that physically prevented the seat from being able to disengage from the tongue-and-groove interface when the pin was installed; (b) designed the Pinnacle Bench with a spring-loaded screw that held the seat in place by locking into holes placed at various heights along the leg of the Pinnacle Table; (c) placing an adjustable leg or brace (or other type of support) under the seat, making it physically impossible for the seat to fall; or (d)

designed the Pinnacle Table with the seat as an independent stool and not affixed to the Pinnacle Bench.

23. The Pinnacle Bench caused injury to Ferrin's lower back.

24. Ferrin did not expect the seat on the Pinnacle Bench to fall unexpectedly when he was sitting on the seat.

25. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### (Strict Liability: Manufacturing Defect)

26. Ferrin incorporates paragraphs 1-26 as if fully set forth herein.

27. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

28. A product designer, manufacturer, distributor, and seller is liable for injuries caused by its product if: (a) the product was unreasonably dangerous due to a manufacturing defect; (b) the manufacturing defect existed at the time the product was sold; and (c) the manufacturing defect was a cause of the plaintiff's injuries.

29. A product contains a manufacturing defect and is unreasonably dangerous when (a) the product differs from the manufacturer's design, specifications, and/or intentions and (b) the product is more dangerous than an ordinary consumer would expect.

30. On information and belief, the Pinnacle Bench in this case contained manufacturing defects in that it differed from the manufacturer's design,

specification, and/or intentions and/or it differed from products from the same manufacturer that were intended to be identical.

31. The manufacturing defects made the Pinnacle Bench unreasonably dangerous in that the person using the Pinnacle Bench would not expect the seat on which they were sitting to fall without warning when the seat was properly engaged in the tongue-and-groove interface.

32. The manufacturing defects of the Pinnacle Bench were present at the time Defendants manufactured, distributed, and sold the Pinnacle Bench.

33. Defendants could have manufactured the Pinnacle Bench so that Ferrin would not have been injured.

34. Ferrin did not expect the Pinnacle Bench to perform as it did and was completely surprised when the seat on which he was sitting and which was properly engaged in the tongue-and-groove interface fell without warning.

35. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
(Strict Liability: Failure to Warn/Instructions)

36. Ferrin incorporates paragraphs 1-36 as if fully set forth herein.

37. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

38. A product designer, manufacturer, distributor, and/or seller is liable for injuries caused by their product if: (a) the product was unreasonably dangerous

due to a lack of an adequate warning or instructions; and (b) the lack of adequate warning or instructions was the cause of the plaintiff's injuries.

39. A product with an inadequate warning or instructions is unreasonably dangerous when that product is more dangerous than an ordinary consumer would expect.

40. Defendants knew the type of interface that they selected for the Pinnacle Bench. Defendants also knew that the interface between the seat and the leg did not physically lock into place.

41. Defendants knew or should have known the seat of the Pinnacle Bench presented a latent danger to the user of the Pinnacle Bench. As a result, Defendants should have posted an adequate warning in the instruction manual and along the leg of the Pinnacle Bench on which the seat was attached warning the user of the potential for the seat to unexpectedly fall.

42. Had the Defendants provided an adequate warning, Ferrin would not have been injured.

43. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

### FOURTH CAUSE OF ACTION
(Negligence)

44. Ferrin incorporates paragraphs 1-44 as if fully set forth herein.

45. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

46. Defendants have a duty to exercise reasonable care in designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

47. Defendants failed to exercise reasonable care in designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench, including (a) by emphasizing comfort in the use of the Pinnacle Bench over safety of the design; (b) by emphasizing the speed of changing the seat location over the safety of ensuring the seat was securely attached and locked in place on the leg of the Pinnacle Bench; (c) by failing to design the seat of the Pinnacle Bench in such a way that it was locked in place and unable to move without being unlocked by the user, and (d) by failing to design seat of the Pinnacle Bench free from latent defects associated with the mechanism by which the seat attached to the leg of the Pinnacle Bench.

48. Defendants failed to provide proper warnings concerning the Pinnacle Bench including failing to warn operators of the potential for the seat to unexpectedly fall.

49. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

50. On information and belief, Defendants' actions in this case have been outrageous, willful, and wanton, entitling Plaintiff to punitive damages.

### FIFTH CAUSE OF ACTION
(Breach of Implied Warranties)

51. Ferrin incorporates paragraphs 1-51 as if fully set forth herein.

52. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench. Defendants designed, tested, manufactured, marketed, distributed, and sold the Pinnacle Bench at issue in this case.

53. The Pinnacle Bench breached the implied warranty of merchantability. Wyo. Stat. Ann. § 34.1-2-314.

54. Defendants knew the particular purpose for which the Pinnacle Bench would be used, but the Pinnacle Bench was unfit for that purpose. Thus, Defendants breached the implied warranty for a particular purpose. Wyo. Stat. Ann. § 34.1-2-315.

55. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

### SIXTH CAUSE OF ACTION
(Breach of Express and Implied Warranties)

56. Ferrin incorporates paragraphs 1-56 as if fully set forth herein.

57. Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the Pinnacle Bench.

58. On information and belief, Defendants expressly and impliedly warranted to Ferrin and to all who would use the Pinnacle Bench that, among other things, the Pinnacle Bench was reasonably fit and safe for use and were of merchantable quality.

59. Defendants breached this warranty by producing products that were not reasonably fit and safe for use nor was it of merchantable quality.

60. As a direct and proximate result of the foregoing, Ferrin suffered injury, has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disability and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Ferrin prays for judgment against Defendants for a just amount together with pre- and post-judgment interest and costs as follows:

1. For general damages in an amount to be proven at trial;

2. For special damages in an amount to be proven at trial, including interest as provided by law;

3. For punitive and exemplary damages;

4. For attorney's fees and costs to the maximum extent allowed by law; and

5. For all such other and further relief as the Court deems just and appropriate.

DATED this 24th day of October, 2017.

FABIAN VANCOTT

_____
Matthew S. Brahana
*Attorneys for Plaintiff*

Matthew S. Brahana (WSB No. 6-4290)
FABIAN VANCOTT
215 South State St., Suite 1200
Salt Lake City, Utah 84111
Phone: 801-531-8900
Fax: 801-596-2814
mbrahana@fabianvancott.com
*Attorneys for Plaintiff*

FILED IN THE DISTRICT COURT
OF UINTA COUNTY, WYOMING

OCT 25 2017

ORIGINAL SIGNED BY   DEPUTY
SHANDA FIFE
KERRI HUNSAKER
CLERK OF DISTRICT COURT

## IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
## IN AND FOR UINTA COUNTY, STATE OF WYOMING

| | |
|---|---|
| RICHARD TERRY FERRIN,<br>Plaintiff,<br><br>v.<br><br>CABELA'S INC. d/b/a CABELA'S,<br>a Delaware corporation, and DOES I-X<br>Defendants. | **JURY DEMAND**<br><br>Civil No.: 17-215 |

Pursuant to Rule 38(b)(1) of the Wyoming Rules of Civil Procedure, Plaintiff demands a jury trial for all issues so triable.

DATED this 24th day of October, 2017.

FABIAN VANCOTT

_____
Matthew S. Brahana
*Attorneys for Plaintiffs*